# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 289 - all | **DATE** | 3/15/2001 |
| **CASE TITLE** | UNITED STATES vs. BRIENO, ETAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order denying motions to dismiss, for severance, bill of particulars, and to hear evidence of the existence of a conspiracy prior to trial.**

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 56 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
MAR 20 2001

UNITED STATES OF AMERICA,

v.

NORMAN BRIENO, et al.,

No. 00 CR 289
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Norman and Eileen Brieno, Dennis Graziani, Etta Tomczyk, and John Vanko were indicted on charges including illegal gambling (pursuant to 18 U.S.C. § 1955), mail fraud (pursuant to 18 U.S.C. §§ 1341 and 1342), and money laundering (pursuant to 18 U.S.C. § 1956). Defendants are accused of defrauding charitable organizations through an illegal gambling operation. They move, or adopt motions, to dismiss various counts of the indictment and for other relief as well.

*I. The Motions to Dismiss*

For purposes of this motion only, I assume, as I must, that the allegations are true. Norman Brieno owned AB Casino Supplies. In connection with this business, he and his co-defendants organized "Las Vegas night" fundraisers for local charities. They prepared and mailed flyers soliciting potential attendees, supplied gaming equipment, and recruited persons to deal poker and blackjack. During the course of numerous gaming events, defendants allegedly defrauded charitable organizations by skimming cash and checks from the proceeds of the games. Specifically, it is alleged that Norman and Eileen Brieno directed patrons who purchased game chips with checks to leave the payee portion of their checks blank or to make them payable to "cash" instead of to the charitable organization hosting the event. The Brienos then gave the

checks to Etta Tomczyk to cash through Danny's Buy-Low Liquors' bank account. A few days later, the Brienos collected the cash.

Norman and Eileen Brieno now move to dismiss Count 4 (illegal gambling) and Counts 8-16 (money laundering).

*Motion to Dismiss Count 4 – 18 U.S.C. § 1955 – Illegal Gambling*

In order to establish a violation of 18 U.S.C. § 1955, the government must prove that defendants conducted, financed, managed, supervised, directed, or owned a gambling business that: (1) violated state law; (2) involved five or more persons; and (3) was either in substantial continuous operation for more than 30 days or had gross revenue of $2,000 or more in a single day. See *United States v. Cyprian*, 23 F.3d 1189, 1199 (7th Cir. 1994). Defendants argue that Count 4 should be dismissed because the indictment does not allege a violation of Illinois law, and therefore does not establish a violation of § 1955. Alternatively, they argue that § 1955 is unconstitutional as applied to this case.

The state law that the Brienos allegedly violated is the Illinois Charitable Games Act, 230 ILCS 30/1. Pursuant to the Charitable Games Act, no person except a "bona fide member," "employee," or "volunteer" of the sponsoring charitable organization may "participate in the management or operation" of a charitable gambling event. See 230 ILCS 30/8 (2). The Act provides examples of actions that constitute "management" or "operation." These include: selling admission tickets, redeeming chips, supervising, directing, or instructing anyone conducting a game, or counting or handling chips or play money.[1] Norman and Eileen Brieno

---

[1] Certain other activities do not constitute participation in the management or operation of the game and are permissible under the Charitable Games Act. These activities include setting up, cleaning up, selling food and drink, or providing security at the event. See 230 ILCS 30/8(2).

2

allegedly controlled the sale and redemption of poker and blackjack chips at several charitable gaming events. Dennis Graziani allegedly managed and supervised the poker tables.[2] These actions are clearly prohibited by 230 ILCS 30/8 (2).

The indictment further charges the Brienos with violating 230 ILCS § 30/8(1), which requires the entire net proceeds from charitable games to be exclusively devoted to the lawful purposes of the organization permitted to conduct that game, and 230 ILCS § 30/8(3), which prohibits a person from receiving any compensation or remuneration from any source for participating in the management or operation of a charitable game. The indictment alleges that the Brienos cashed checks that were intended for charities and kept the money for themselves. Defendants' alleged course of conduct, if proven, would establish a violation of both these sections of the Charitable Games Act. The indictment is neither vague nor non-specific, as defendants charge.

Defendants' assertion that they fall within the § 1955(e) exception is also unpersuasive. Section 1955(e) sets forth an exception barring the statute's application to any game of chance:

> "conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the course of such activity."

Section 1955(e) is inapplicable here. The charitable organizations involved were not operating and managing the Las Vegas night fundraisers. The Brienos and their co-defendants were. The

---

[2]The Charitable Games Act places additional restrictions on suppliers of equipment or devices designed for use in the playing of charitable games. Suppliers may not "participate in the management or operation of a charitable games event," nor may they "solicit a charitable games license or qualified organization." See 230 ILCS 30/6. The indictment alleges that Norman Brieno and "Person A" established AB Casino Supply, and were thus "suppliers" within the meaning of the Charitable Games Act. I note that the indictment contains no such allegation with respect to Eileen Brieno.

Brienos allegedly conducted the fundraisers as a profit-making gambling business. Even if defendants were considered "employee[s] of such [charitable] organization[s]," §1955(e) does not apply to employees who received part of the gross receipts from a charitable gaming event for their own benefit. This is precisely what the indictment alleges that the Brienos did. See *United States v. Cyprian*, 23 F.3d 1189, 1199 (7th Cir. 1994)(holding that the § 1955(e) exception did not apply where the jury could have reasonably concluded that defendant knew that the charitable organization was not the actual operator of the games).

Defendants' argument regarding the constitutionality of 18 U.S.C. § 1955 also fails. The Seventh Circuit has considered the question of Congress's authority to regulate local gambling operations under the Commerce Clause. The court concluded that "[b]ecause Congress rationally determined that large-scale illegal gambling operations are also often tied to organized crime, we can safely conclude that § 1955 properly reaches even 'purely local' gambling businesses." *United States v. Zizzo*, 120 F.3d 1338, 1350-51 (7th Cir.), *cert. denied*, 522 U.S. 998 (1997). Other circuits have reached the same conclusion. See *United States v. Wall*, 92 F.3d 1444, 1449 (6th Cir. 1996); *United States v. Boyd*, 149 F.3d 1062, 1066 (10th Cir. 1998); *United States v. Lee*, 173 F.3d 809 (11th Cir. 1999).

*Motion to Dismiss Counts 8 Through 16 – 18 U.S.C. § 1956 – Money Laundering*

Defendants have moved to dismiss Count 8 (money laundering conspiracy) and Counts 9 through 16 (substantive money laundering). The gist of the money laundering allegations is that defendants took checks intended for charitable organizations, gave them to Etta Tomczyk (who cashed them at her liquor store bank account) and later picked up the cash from Tomczyk. The question is whether these actions state a claim for money laundering under 18 U.S.C. § 1956.

4

18 U.S.C. § 1956(a) provides in pertinent part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–
(B) knowing that the transaction is designed in whole or in part–
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .
(ii) . . .shall be sentenced to a fine . . . or imprisonment . . . or both.

The bone of contention in this case is at what stage the predicate crime becomes a completed offense, such that the money derived from the predicate crime becomes "proceeds" within the meaning of the federal money laundering statute.

Defendants argue that the checks cashed by defendants were not "proceeds" within the meaning of the statute. Proceeds are monies received *after* an illegal activity takes place. See *United States v. Kennedy*, 64 F.3d 1465 (10th Cir. 1995) (to demonstrate a violation of § 1956, the government must show a transaction meeting the statutory criteria that takes place after the underlying crime has been committed). Here, defendants argue, at the time the checks were given in return for chips, the checks did not represent the "proceeds" of any gambling activity, as no gambling activity had taken place at that point with respect to that player and his or her check.

It is immaterial that the particular patrons whose checks defendants accepted had not engaged in gambling at the moment defendants accepted their checks. There is an alternative predicate offense set forth in the indictment–namely, mail fraud–the proceeds of which defendants allegedly concealed by cashing the checks at the liquor store bank. The checks were, therefore, "proceeds" of the mail fraud scheme to defraud charitable organizations. Since the financial transactions alleged in Counts 8 through 16 occurred after the mail fraud offenses, the motion to dismiss the money laundering charges lacks merit.

5

The motions to dismiss Count 4 and Counts 8 through 16 are denied.

*II. Motions to Sever Under Rules 8 and 14*

I deny the severance motions. All of the offenses are alleged to arise out of a unified course of conduct. It is true that gambling, tax evasion and money laundering are often linked together in a single criminal course of conduct accomplished without defrauding a charity. But it remains that in this case the alleged defrauding of charities is an integral part of the alleged methods of the offenses (how it is that defendants got the money) and, if true, is additional evidence of motive for the acts of tax evasion and money laundering. A better, but not necessarily a winning, argument would be to ask to sever out the gambling charges but, since this confers no perceptible tactical benefit on the defense–they do not make the argument.

*III. Motions for a Pre-Trial Hearing on Conspiracy and for Rule 404 and 608 Discovery*

The motion to hear evidence of the existence of a conspiracy prior to trial is denied without prejudice. The request may be made after the *Santiago* proffer is tendered. Examination of that document will allow me to determine whether to decide the question of admissibility after hearing argument of counsel or only after hearing the evidence of witnesses. The proffer is to be made 14 days prior to trial.

I am satisfied with the government's response to the request for 404 and 608 evidence.

*IV. Motion for a Bill of Particulars*

The demand for a bill of particulars is denied without prejudice to another, more appropriate motion. The present motion for particulars is an intelligent attempt to secure fairly broad discovery. It is not a good motion for a bill of particulars–which essentially amends the indictment by requiring the government to prove specifics beyond those ordinarily required in an indictment. A bill may also narrow the indictment. I am unprepared to require this of the prosecution here. I do not think that the information requested is necessary to prepare for trial (or to develop an affirmative defense). For example, the precise amount of income the government claims was received from casino games is not crucial to the proof of or defense of the charge. The government represents that it will provide Jencks Act disclosures and trial exhibits 30 days prior to trial. In my view that is substantial discovery in this case and tendered much earlier than any rule or statute would compel. After such discovery is had, I will permit another motion for a bill of particulars to be filed.

## Conclusion

The motions to dismiss Count 4 and Counts 8 through 16 are denied. The severance motions are denied. The motion to hear evidence of the existence of a conspiracy prior to trial is denied without prejudice. The demand for a bill of particulars is also denied without prejudice.

ENTER:

James B. Zagel
United States District Judge

DATE: MAR 15 2001

7